ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
v. BLISS-COOK OAK COMPANY.

Opinion delivered May 3, 1915.

1. CARRIERS—MISDELIVERY OF FREIGHT—LIABILITY—NOTICE.—A. shipped lumber via defendant carrier, to shipper's order, the bill of lading providing that claims for loss occasioned by failure to deliver must be made to the carrier within four months after a reasonable time for delivery has elapsed. The carrier made a misdelivery of a portion of the shipment. *Held,* notice of the loss, given to the carrier within four months after the discovery of the misdelivery, is a sufficient notice under the bill of lading. A shipper is not chargeable with notice of a misdelivery, and the specified period of time for presenting the claim does not begin to run until information of the misdelivery is received.

2. CARRIERS — FREIGHT — MISDELIVERY — DAMAGES. — Plaintiff shipped goods by defendant carrier consigned to shipper's order. The firm for whom the goods were intended failed to perform its contract, and plaintiff sold the goods to other parties. Meantime the carrier improperly delivered some of the goods to the firm for whom the goods were originally intended. *Held,* in an action for damages against the carrier, that under the evidence it could not be said the plaintiff had neglected to take steps which would have minimized the damages.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*E. B. Kinsworthy, R. E. Wiley and T. D. Crawford,* for appellant.

1. It was within the power of the appellee on the 29th day of February to recall the bill of lading by wire and to direct the railway company to deliver the lumber to the Continental Lumber Company, which undertook to pay the appellee's claim in full. Instead, appellee sold

to another company for a much smaller sum. It was the duty of appellee to minimize its loss. 67 Ark. 371; 78 Ark. 366; 80 Ark. 228; 96 Ark. 78; 102 Ark. 246.

2. The claim for damages was not made within the time limited by the bill of lading. 101 Ark. 436.

*Coleman & Lewis,* for appellee.

1. On the question of mitigation of loss, the cases cited by appellant do not apply to the case presented here, but even if they did apply in a case where the loss occurs through wrongful delivery, (and they do not,) even then, appellee has demonstrated that it exercised due diligence. 89 Ark. 346.

2. Appellee knew nothing of the delivery to the Continental Lumber Company until February 29, 1912. The limitation in the bill of lading contended for by appellant does not apply, and it would be unreasonable to hold it to bar recovery. The full measure of appellee's duty was to use such care and diligence as a man of ordinary prudence would have used under similar circumstances. 78 Ark. 373. And that was a question for the court to determine. *Id.*; 102 Ark. 251.

But appellee is not suing either for *loss* of shipment or for *damage* thereto, but for *wrongful* conversion of its property, and it owed no duty to appellant, whatever the requirements of the bill of lading, to file its claim within four months. 113 N. Y. S. 676; 228 Pa. 647, 31 L. R. A. (N. S.) 1178 and note; 143 Ala. 304, 5 Am. & Eng. Ann. Cases, 97 and note; 4 Am. & Eng. Ann. Cases, 19 and note; 89 Ark. 342.

3. Appellant is estopped from urging the foregoing defenses. Its claim agent, after taking about two years to "carefully investigate," placed his refusal to recognize the claim, not upon the ground that appellant could have avoided loss and failed to do so, nor that it failed to file claim within four months, but upon the ground that the Continental Lumber Company "was at all times ready and willing to pay the full amount of the invoice," and that appellee, knowing this fact, requested that the lumber be delivered to that company's com-

petitor. Appellant may discard the defense relied on for two years, but it will not be permitted to interpose new ones. 96 U. S. 258; 45 Ark. 37; 83 Ark. 554.

McCulloch, C. J. This is an action instituted by appellee to recover damages on account of misdelivery at point of destination of a carload of lumber shipped by appellee to Seattle, Washington, the shipment being initiated over the line of the appellant's railroad. The shipment was to appellee's own order, with a specification in the bill of lading to notify the Continental Lumber Company, a concern at Seattle, to whom the shipment had been sold. Appellant delivered the car of lumber to a connecting carrier at Kansas City, and in doing so its servants made a mistake in rebilling the car so that the shipment went through on straight billing to the Continental Lumber Company without showing that the consignment was to the shipper's order. Appellee drew a draft on the Continental Lumber Company and sent it for collection, with the bill of lading attached, to a bank in Seattle and gave instructions to deliver the bill of lading on payment of the draft. The delivering carrier at Seattle, on account of the error in the way bill, delivered the car of lumber to the Continental Lumber Company without requiring a surrender of the bill of lading. The car of lumber was placed in storage and held there several months, when it was finally retaken by appellee, but in the meantime the Continental Lumber Company had taken from the car 2,484 feet of the lumber, valued according to the price at which it was to be sold, at $219.45. This fact did not become known to appellee until several months thereafter, and after there had been considerable correspondence between it and the bank and the Continental Lumber Company concerning the failure of the latter to pay the draft. The car reached Seattle on November 28, 1911, and the wrongful delivery to the Continental Lumber Company occurred on November 30, 1911. Considerable correspondence took place between appellee and the collecting bank at Seattle, and between appellee and the Continental

Lumber Company, as before stated, concerning the payment of the draft, appellee's officers being under the impression all the while that there had been no error in the way-billing and that the car of lumber was still being held by the railroad company subject to the shipper's order. The Continental Lumber Company failed to pay the draft, and in the correspondence which followed it made repeated promises to appellee and the bank concerning the payment. The correspondence shows evasive conduct on the part of the Continental Lumber Company, and misrepresentations concerning the transactions. It went so far at one time as to represent in one of its letters that it had actually made remittance direct to the appellee for the price of the lumber. The bank at Seattle returned the draft to appellee and the Continental Lumber Company wired for its return, promising to pay it immediately, and in the meanwhile the car was in storage subject to the order of the Continental Lumber Company, and the latter took some of the lumber out of the car and sold it.

Appellee finally lost confidence in the promises of said purchaser, and on February 19, opened negotiations with another lumber concern in Seattle for the sale of the carload of lumber, and those negotiations were prosecuted to a final agreement whereby the concern agreed to purchase the carload of lumber and instructed appellee to wire the railroad company to deliver it. It was then discovered by the new purchaser, and by appellee for the first time, that there had been a misdelivery. The Continental Lumber Company then wired appellee, requesting permission to pay for the lumber and retain it, and for the first time called appellee's attention to the fact that the lumber was in its possession. Appellee having made a bargain with the other concern in Seattle, refused to deal further with the Continental Lumber Company, and caused the last purchaser to take possession of the lumber, but failed to recover the amount which the Continental Lumber Company had taken from the car. In addition to the price of that part of the shipment which was lost, appellee had to expend $54.30 for storage and

reloading the car, which was necessary in order to make delivery to the new purchaser, and a certain amount in telegrams which passed between appellee and the bank and between appellee and the Continental Lumber Company.

The case was tried upon an agreed statement of facts by the court sitting as a jury, and judgment resulted in favor of appellee for all of the items sued for. There is no contention that there were any items of damage improperly embraced in the judgment if there was any liability at all, but there are two contentions made by appellant—one that the claim for damages was not presented in time, and the other that appellee failed to discharge its duty to minimize the loss, after discovering that there had been a misdelivery.

The bill of lading was a standard form and contained the following stipulation:

"Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within four months after delivery of the property, or, in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made the carrier shall not be liable."

(1) Claim was made to the delivering carrier on April 9, 1912, and upon the request of the latter, was also made to the appellant as the initial carrier on June 18, 1912. Learned counsel cite cases on the brief tending to support their contention that the stipulation does not cover loss on account of misdelivery. The authorities cited tend in some degree to sustain the contention, but the stipulation here is somewhat broader in its terms than the stipulations involved in the cited cases. The language used in the stipulation now before us shows that it was intended to cover loss on account of failure of delivery and it may well be argued that this embraces a loss on account of misdelivery, for that is included within the broader term of a failure to make delivery according to the terms of the contract. But it will be observed that the stipulation does not fix a definite time for the

period to begin, but uses somewhat elastic terms in stating that in case of a failure to deliver the claim must be made within four months "after a reasonable time for delivery has elapsed." Now, in the present case, we think that under the evidence the trial court was justified in finding that the claim was made within the time specified. In the method adopted in shipping the car, that is to say to the shipper's order, it was necessarily contemplated that there might be some delay in making delivery. In fact, there was considerable delay, and the draft was never paid and there was no rightful demand upon the railroad company for delivery until about the last of February, when it was ascertained that there had been a wrongful delivery to the original purchaser. The claim was presented to the delivering carrier on April 9, which was four months and eleven days after the car arrived at Seattle. Now, it will only be necessary to treat the first eleven days as a reasonable time for delivery in order to reach the conclusion that the claim was made within the time stipulated, and we think it was entirely within the range of the testimony for the court to treat even a longer period than eleven days as a reasonable time for making the delivery where a commodity of this kind is transported by the carrier under a bill of lading which calls for delivery to the shipper's order. The fact must not be overlooked that the consignment was, on its face, to cover a distance of several thousand miles, and the parties to the transaction must have known, by the consignment being to the shipper's order, that there would necessarily be some time required for negotiations at the place of delivery before there could be a delivery. This is what was manifestly intended by the language used in the stipulation. It must have been contemplated by the framers of the stipulation in the bill of lading that there would be delay in shipments of this kind, hence the flexible term that was used there with respect to the commencement of the period for making claim of loss where there had been a failure to deliver. Moreover, the claim was presented to the delivering carrier considerably less than four months after appellee and its agents received infor-

mation of the wrongful delivery, and that was sufficient. Appellee had the right to assume that the delivering carrier would not make an unauthorized delivery. It was not, therefore, chargeable with notice of such misdelivery and the specified period of time for presenting the claim did not begin to run until information of the misdelivery was received.

(2) We are of the opinion that there is no foundation for the other point made, that appellee failed to take any steps to minimize its loss. The basis of the argument is that appellee had not consummated its agreement for sale to the purchaser at the time the original purchaser offered to take the lumber and pay the full price, and it was appellee's duty to reinstate the broken contract with the original purchaser and accept the price. We think the argument is faulty for two reasons, first, that the original purchaser had broken the contract and appellee had consummated a sale to the other concern, and it was not bound to break its new contract in order to comply with the contract with the Continental Lumber Company, the terms of which the latter had already violated. In the next place, the Continental Lumber Company had not only broken its contract, but had been guilty of most evasive and reprehensible conduct in its dealing with appellee, and the latter was justified in disregarding any further negotiations in that direction. If it had accepted the new promise of the Continental Lumber Company, it had no assurance that the promise to pay would be kept; and if in reliance on that promise it had consented to the delivery to the Continental Lumber Company, and allowed the latter to make a sale to another purchaser, the carrier would then have been in position to claim that appellee failed to take charge of the lumber and had suffered a loss by reason of its restored confidence in the Continental Lumber Company. Appellee was called to act in the matter after the original purchaser had broken its contract, and it was justified in regaining possession of the remainder of the lumber and selling it to another available and re-

liable purchaser. Our conclusion is that the appellee's conduct is not open to the charge of omission to do all that was necessary, proper and reasonable to minimize the damage.

The judgment is correct and the same is affirmed.